**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-31187
Summary Calendar

COASTAL CARGO COMPANY, INC,

Plaintiff-Appellee,

VERSUS

GUSTAV SULE MV; Etc; ET AL,

Defendants.

------------------------------------------

ESTONIAN SHIPPING CO, LTD,

Defendant-Third Party Plaintiff-Appellant,

and

KEGAN SHIPPING COMPANY, LTD,

Third Party Plaintiff,

VERSUS

STEAMSHIP MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, LTD,

Third Party Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana
District Court No. 96-CV-1029-K

November 14, 2000

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Estonian Shipping Company, Ltd. ("Estonian") appeals the judgment entered in favor of Coastal Cargo Company, Inc. ("Coastal Cargo") after a bench trial.  We affirm.

## FACTS AND PROCEDURAL HISTORY

In March 1996, Plaintiff, Coastal Cargo, a stevedoring company in New Orleans, Louisiana, provided approximately $45,000 worth of vessel discharging services to the M/V GUSTAV SULE.

Kegan Shipping Company ("Kegan") owned the M/V GUSTAV SULE. Kegan bareboat chartered the vessel to Estonian, a foreign state as defined by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602.  Estonian then time chartered the vessel to Shelbourne Investments, Inc., and Baff Shipping guaranteed the performance of Shelbourne under the time charter party.  Shelbourne subchartered the vessel to American International Oil Company ("AIOC").  AIOC hired Coastal Cargo's stevedores to unload the vessel, but failed to pay for their services due to insolvency.  Coastal Cargo brought suit to recover the payment due.  The related third-party suit arose from a dispute among the various owners, charterers, and their insurers concerning who should be held responsible for the unpaid bill.  Coastal Cargo's entitlement to payment for its services and the amount due is not challenged on appeal.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On March 20, 1996, Coastal Cargo faxed a letter to Estonian demanding security for the stevedoring bill and advising Estonian that it would enforce its maritime lien by arresting the vessel if the demand was not satisfied. Estonian notified both Coastal Cargo and Shelbourne/Baff that Shelbourne/Baff was responsible for paying the bill pursuant to its charter agreement. On March 21, 1996, Coastal Cargo filed its original complaint against the M/V GUSTAV SULE *in rem* to enforce its lien.

Meanwhile, attorney Christopher Davis contacted Coastal Cargo's attorney, saying that he represented Baff and its underwriter, Steamship Mutual Protection and Indemnity Association Ltd. ("Steamship Mutual"). On March 22, 1996, Davis sent Coastal Cargo a proposed letter of undertaking to be used as security for the release of the vessel. The proposed letter of undertaking was rejected because it did not include provisions for posting bond or filing a claim of ownership. On March 23, 1996, the M/V GUSTAV SULE was arrested.

Estonian, concerned that its vessel was under seizure, contacted its underwriter, UK P&I, who hired New Orleans attorney Dwight LeBlanc to represent Estonian's interests in the matter. LeBlanc contacted Coastal Cargo and Davis on March 23, 1996. A revised letter of undertaking was issued the same day under the signature for Steamship Mutual, representing that Steamship Mutual would "file or cause to be filed a claim on behalf of the owners of

the M/V GUSTAV SULE, with the *in rem* appearance and claim of ownership to be consistent with the defenses available to the vessel and its owners and which appearance and claim shall not be a waiver of any such defenses." Later that day, the vessel was released. Davis faxed a letter to LeBlanc on March 27, 1996 which stated:

> I reconfirm that neither the Association (Steamship Mutual) nor Time Charterers (Baff Shipping) will take any action, either *in rem*, or otherwise, against the M/V GUSTAV SULE or against her owners, Estonian Shipping Company, Ltd., in connection with this matter.

LeBlanc testified at trial that upon receipt of this fax, he closed the file and considered the matter ended as the charterers were taking care of the problem. LeBlanc did not file an answer on behalf of Estonian and did not file a "Claim of Owner" as provided by Rule C, Supplemental Rules for Admiralty and Maritime Claims.

Between April 11, 1996 and July 4, 1996, Davis made three requests for documents to be used in asserting a defense under the FSIA in the name of Estonian. Davis's second communication included a copy of a federal district court opinion explaining that if the FSIA defense to the *in rem* action was successful, an *in personam* action may be brought in its place. Davis did not communicate with LeBlanc during this time and at no time did he discuss with LeBlanc the possibility or ramifications of asserting FSIA defenses in this matter. Rather, Davis communicated with Estonian by fax transmissions to UK P&I Club, Estonian's

4

underwriter.  The UK P&I Club forwarded the request directly to Estonian through its insurance department, and Estonian provided Steamship Mutual the requested documents.  On July 19, 1996, Davis filed a pleading signed as counsel for Estonian making a restricted appearance and a claim for the vessel.  Davis further filed a Motion for Release of Security along with the Estonian documents supporting the FSIA defense.  The district court granted the motion on October 16, 1996, and the Letter of Undertaking was returned to Steamship Mutual.  In December 1996, Davis withdrew as counsel of record in the litigation per the instruction of Steamship Mutual and informed both Baff and Estonian that he was withdrawing and that the trial in the matter had been continued without date.

On August 20, 1997, Coastal Cargo amended its complaint to effect *in personam* jurisdiction over Estonian and Kegan under the FSIA.  Sometime during the Fall of 1997 Baff/Shelbourne became insolvent.  On May 4, 1999, new counsel for Estonian filed a third-party action against Baff and Steamship Mutual, alleging that it was Baff's responsibility to pay the stevedoring charges and that at no time had Estonian authorized Steamship Mutual or Baff to represent its interest in the court proceedings.  Estonian urged causes of action for detrimental reliance and judicial estoppel against Steamship Mutual.

Following a one-day trial, the district court rendered judgment in favor of Coastal and against Estonian for $44,442.10

5

plus interest, in favor of Steamship Mutual and against Estonian and dismissed Estonian's Third Party complaint.

**DISCUSSION**

**A.   FSIA**

Section 1609 of the FSIA prohibits the arrest or attachment of a vessel owned by a foreign government or one of its instrumentalities.  28 U.S.C. § 1609.  However, while a vessel owned by a foreign government may not be arrested or attached under 28 U.S.C. § 1609, § 1605 provides for an *in personam* proceeding against the government itself.  28 U.S.C. § 1605; *see also Maritrend, Inc. v. M/V SEBES*, 1997 WL 660614 at *4 (E.D. La. Oct. 23, 1997).  By entering a "Claim of Owner" for Estonian and invoking FSIA, Steamship Mutual successfully argued that the vessel had been wrongfully seized and that the *in rem* action, in which Steamship Mutual had supplied the Letter of Undertaking, was without merit.  This left Coastal Cargo with the option of pursuing its claims against Estonian *in personam*, which it did.

Estonian's complaint begins with the undisputed premise that AIOC should have paid for the stevedoring services and when AIOC failed to pay them, it became the responsibility of Baff to pay them under the terms of the Time Charter Party between Baff and Estonian.  Estonian takes the position that it did not realize that it had potential *in personam* liability for the charges until after the *in rem* action had been dismissed and both AIOC and Baff had

become insolvent, and it therefore failed to protect its interests.

**B.    Detrimental Reliance**

Estonian first appeals the adverse judgment on its Louisiana detrimental reliance claims.  Article 1967 of the Louisiana Civil Code provides, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."[1]  Thus, to recover under its detrimental reliance theory, Estonian had to establish that (1) Steamship Mutual made a representation; (2) Estonian justifiably relied on that representation; and (3) Estonian changed its position to its detriment because of that reliance.  *Bernofsky v. Tulane Univ. Med. Sch.*, 962 F. Supp. 895, 905 (E.D.La. 1997).

On the first element, the district court understood Estonian to take the position that Steamship Mutual made the operative representation in its April 11, 1996, fax to UK P&I Club by stating that "the suit could be dismissed and the security returned if

---

[1]On appeal, Estonian argues that it is entitled to prevail on this issue relying on the federal admiralty law concept of equitable estoppel.  Estonian pleaded a cause of action under the Louisiana law of detrimental reliance, then asserted its equitable estoppel claims for the first time orally at trial.  The district court refused to allow Estonian's eleventh-hour assertion of a new cause of action, holding that "this invocation occurred too late in the day, and the Court believes its application would have no real effect on its decision."  *Coastal Cargo Co., Inc. v. M/V GUSTAV SULE*, 96-CV-1029-K, 13 n.5 (E.D. La. 1999)(unpublished).  Estonian does not challenge that holding on appeal.  We therefore review the district court's ruling in light of Louisiana detrimental reliance law.

7

evidence could be provided that head owners are a state controlled company." On appeal, without addressing the district court's opinion in that regard, Estonian contends that they relied instead on the fax from Davis to LeBlanc on March 27, 1996, stating that neither Steamship Mutual nor Baff Shipping would take any action, either *in rem*, or otherwise, against the M/V GUSTAV SULE or Estonian in connection with this matter. We will assume, without deciding, that Steamship Mutual's two statements amount to a representation that it would protect Estonian's interests as opposed to that of the vessel.

On the second prong of detrimental reliance analysis, the district court found that Estonian failed to prove that it justifiably relied on the purported representations. First, Estonian asserts, without reference to authority, that owners and charterers may rely on a party that assumes defense of a maritime matter. Eric Ringmaa from Estonian's legal department testified that Estonian believed that Steamship Mutual and Baff had assumed defense of the matter and would protect its rights by virtue of the actions it took at the time of the initial seizure. Second, Estonian contends that they relied on Steamship Mutual's "silence," because there was no mention of the FSIA defense during the negotiations to release the vessel from seizure and because the claim of ownership and the motion for release were filed by Steamship Mutual on behalf of Estonian without notice to or service

8

of the documents on Estonian's counsel, LeBlanc. The district court found that Estonian's reliance, based on these facts, was not justifiable. The district court, considering all of the correspondence and testimony admitted at trial, initially found that Estonian is a sophisticated commercial entity with two in-house counsel at its disposal. *Academy Mortgage Co. v. Barker, Boudreaux, Lamy & Foley*, 673 So.2d 1209, 1212 (La. App. 4 Cir. 1996)("[A] promisee's business acumen is properly considered when determining reasonableness of the claimed reliance."). Second, the district court found that Steamship Mutual was not silent, but in fact did advise Estonian of its intent to invoke FSIA and the consequences of that decision by faxing legal authority explaining the FSIA defense along with its request for documents necessary to assert that defense. Based on these two findings, the district court concluded that Estonian failed to prove that it justifiably relied on Steamship Mutual's purported representations, and therefore did not consider whether Estonian established the third element of its cause of action. We cannot say that the district court clearly erred in holding that the evidence did not support a finding of justifiable reliance and thereby rejecting Estonian's detrimental reliance claim. *Lake Charles Stevedores, Inc. V. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220 (5th Cir. 1999)(holding that the district court's findings of fact must be upheld unless clearly erroneous).

## C.   Judicial Estoppel

Estonian also challenges on appeal the district court's ruling that Steamship Mutual was not bound by judicial estoppel to defend Estonian's interest in this action after Davis's motion to withdraw was granted in December 1996.   The doctrine of judicial estoppel prevents a party from "taking a position 'that is contrary to a position previously taken in the same or some earlier proceeding.'" *Sabah Shipyard Sdn. Bhd. v. M/V HARBEL TAPPER*, 178 F.3d 400 (5th Cir. 1999).   The doctrine "is used to protect the integrity of the judicial process; it is intended to protect the courts rather than the litigants."   *Perez v. Brown & Williamson Tobacco Corp.*, 967 F. Supp. 920, 926 n.1 (S.D. Tex. 1997).

Estonian points to pleadings filed by Davis early in the proceedings taking the position that it was the obligation of Baff and Steamship Mutual to defend the *in rem* aspects of the claim, and argues that Steamship Mutual is thereby precluded from declining to defend the action at trial.   Estonian's judicial estoppel theory is bottomed on their assumption that Coastal Cargo's claim continued as an *in rem* proceeding after the district court released the vessel and returned Steamship Mutual's letter of undertaking and granted Davis's motion to withdraw.   The district court specifically declined to award judgment in this suit on the basis of *in rem* liability.   Estonian did not argue at trial or brief on appeal any challenge to that ruling.   Therefore Estonian's judicial

10

estoppel argument gains it nothing.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

AFFIRMED.